

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERNARD S. ORANIKA,            )
                               )
          Plaintiff,           )
                               )    No. 04 C 8113
     v.                        )
                               )    Hon. Mark Filip
CITY OF CHICAGO, DEPARTMENT OF )
REVENUE,                       )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernard S. Oranika ("Plaintiff" or "Mr. Oranika"), is suing the City of Chicago Department of Revenue ("the City") for employment discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"); and 42 U.S.C. §§ 1981 and 1983. This case is before the Court on Defendant's Motion to Dismiss in Part Plaintiff's Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 15.)[1] As explained below, the City's motion is granted in part and denied in part.

## BACKGROUND FACTS[2]

Mr. Oranika began working for the City on August 1, 1989. (D.E. 1 at 8.) On or about November 16, 2000 (*id.* at 2), Mr. Oranika filed a charge ("the EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") against the City, asserting the following acts

---

[1] The various docket entries are cited as "D.E. ___."

[2] The background facts are taken from Plaintiff's Complaint (D.E. 1) and are assumed to be true for purposes of this motion. *See, e.g., Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). The Court takes no position as to whether any of the allegations are actually well founded.

1

of alleged discrimination by the City: denial of a merit pay increase, imposition of three work suspensions, failure to promote, harassment, and denial of overtime. (D.E. 1 at 8-23.) In the EEOC Charge, Mr. Oranika stated that the bases for these discriminatory acts were: his national origin (Nigerian) (*id.* at 8, 10, 12, 14, 16-19, 22); his age, 43 (*id.* at 9, 11-13, 15, 17, 19-20, 23); and his filing of two prior EEOC charges (*id.* at 9, 11, 13, 15-18, 21-23). The EEOC Charge contains no allegation of discrimination on the basis of race or color, nor any allegation of discriminatory discharge. (*See id.*) Based on the EEOC Charge, the EEOC issued a right-to-sue letter to Mr. Oranika on September 21, 2004. (*Id.* at 3, 6-7.)

Subsequently, Mr. Oranika filed a complaint ("Complaint") in this Court, alleging the following acts of discrimination by the City: termination of employment, failure to promote, failure to stop harassment, and retaliation. (*Id.* at 3-4.) The Complaint lists the following bases for those discriminatory acts: age, national origin, color, and race. (*Id.* at 3.) It also incorporates the allegations of the EEOC Charge, though it does not include an allegation of any unconstitutional City policy, practice or custom. (*See id.* at 4, 8-25.) The Complaint includes a claim for, among other relief, ten million dollars in punitive damages against the City. (*Id.* at 5.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has sufficiently stated a claim upon which relief can be granted, not who will prevail on the merits. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In ruling on a 12(b)(6) motion, the Court accepts all of the plaintiff's well-pleaded factual allegations as true and makes all reasonable inferences in his or her favor. *Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002). Dismissal is inappropriate "unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

*Pro se* complaints are generously construed and not held to the stringent standards of pleadings drafted by lawyers. *See, e.g., McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

DISCUSSION

### I. The Court Dismisses The Department of Revenue As a Defendant Without Opposition, To The Extent It Ever Was a Defendant.

The City argues that the Department of Revenue ("DOR") should be dismissed as a defendant because it is not a suable entity separate from the City. (D.E. 16 at 2 (collecting authorities).) Mr. Oranika responds that he is suing the City and not the DOR. (D.E. 25 at 4). Because there appears to be no dispute regarding the DOR's status in this suit, the Court dismisses the DOR as a defendant (to the extent it ever was one), and the case will proceed against the City as defendant.

### II. Oranika Has Stated Claims for Race and Color Discrimination

The City argues that Mr. Oranika's Title VII claims of race and color discrimination should be dismissed because they are beyond the scope of his EEOC Charge. (D.E. 16 at 1.) On the apparent (or at least plausible) facts of this case, the Court respectfully disagrees and denies the City's motion to dismiss these claims.

A Plaintiff cannot file suit under Title VII until he has first filed a charge with the EEOC and received a right-to-sue letter. *See* 42 U.S.C. § 2000e(5)(b), (e), & (f); *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999). Consequently, a plaintiff cannot sue on claims that were not included in his EEOC charge. *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A claim will be deemed included in the EEOC charge if it is "like or reasonably related to the allegations of the charge" or "can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotations and citations omitted.) The standard of whether claims are like or reasonably related "is a liberal one,"

3

intended "to effectuate the remedial purposes of Title VII, which itself depends on [unrepresented] lay persons . . . to enforce its provisions." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). At a minimum, however, reasonably related claims must share a factual relationship and "describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 501 (internal citation omitted).

The issue here is whether Mr. Oranika's claim of discrimination on the basis of his being Nigerian is reasonably related to his claims of discrimination on the basis of race and color. Clearly, the term "national origin" is not synonymous with race or color. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (defining "national origin" as "the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Nonetheless, a particular national origin can be reasonably understood to indicate a particular race or color in some instances, such as where the populace of that nation is overwhelmingly of a single race or color. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) (stating that race discrimination and national origin discrimination are often "identical as a factual matter [where] one was born in the nation whose primary stock is one's own ethnic group."); *accord, e.g., Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993) ("Certainly, the line between national origin and race or ethnicity . . . cannot be bright."). Several courts in the Northern District, as well as a number of circuit courts outside the Seventh Circuit, have addressed this issue in apposite contexts.

For example, in *Lapine v. Edward Marshall Boehm, Inc.*, No. 89 C. 8420, 1990 WL 43572 (N.D. Ill. March 28, 1990) (Kocoras, J.), the plaintiff alleged discrimination on the basis of her being Jewish in the EEOC charge, and then alleged claims for national origin and religious discrimination in her complaint. *Id.* at *5. The court held that the EEOC allegation implied a

4

claim of religious discrimination because the term "Judaism" implies both race and religion. *See id.* ("Judaism is indisputably a religion and has been held to constitute a race as well. *See Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) (definition of race under 42 U.S.C. § 1982 includes Jews).") The court also held, however, that the EEOC charge did not imply national origin discrimination because being Jewish does not necessarily indicate Israeli national origin because Jewish people live in and come from many countries and do not share particular "physical or cultural characteristics" that might be associated with a particular national origin group. *Id.*

Similarly, in *Torres v. City of Chicago*, No. 99 C 6622, 2000 WL 549588 (N.D. Ill. May 1, 2000) (Plunkett, J.), the plaintiff alleged national origin discrimination on the basis of his being Hispanic in his EEOC charge, and then alleged a claim of race discrimination in his complaint. *Id.* at *1-2. Although the court conceded that the term "Hispanic" does not literally designate either race or national origin, it noted that the term is commonly understood as implying both. *Id.* at *2. Consequently, the court held that the claims were reasonably related because the EEOC could be reasonably expected to investigate the race claim based on the allegation in the EEOC charge. *Id.*

The fact-specific reasoning applied in both *Lapine* and *Torres* is consistent with 29 C.F.R. § 1606.1 (2005), which governs national origin discrimination claims and defines "national origin discrimination broadly as including, but not limited to, the denial of [an] equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or *because an individual has the physical, cultural or linguistic characteristics of a national origin group.*" (emphasis added). That reasoning is also consistent with the holdings of most of the United States Courts of Appeals that have addressed the issue of when discrimination claims are

5

reasonably related to each other. *See, e.g., Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) (stating that race and national origin discrimination claims are reasonably related where they can be described by the same term, such as "Hispanic" or "Asian Indian"); *id.* (collecting cases and stating that courts have "recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable *depending on the specific facts of the case*") (emphasis added); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 n.10 (10th Cir. 1997) (claims of discrimination based on Mexican-American ancestry fall within § 1981's protection against racial discrimination); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991) (stating that a lower court could have reasonably found an Indonesian plaintiff's race and national origin discrimination claims to be reasonably related, though finding no clear error in the lower court's contrary ruling due to the fact that the plaintiff had been represented by counsel and thus, the court was not required to construe the claims so generously); *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B. 1981) ("In some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable.") (internal citations omitted); *see also Sinai v. New England Tel. & Telegraph Co.*, 3 F.3d 471, 475 (1st Cir. 1993) (affirming a jury's finding of race discrimination under § 1981 based on evidence of national origin discrimination under Title VII because plaintiff's national origin was Israeli, and thus, the jury could have also found race discrimination based on the fact that Israel's populace is primarily Jewish).

This Court adopts this majority view. The people of Nigeria appear to be overwhelmingly black (Mr. Oranika claims discrimination on the basis of, for example, color)—and, more to the point for present purposes, certainly nothing in the Complaint suggests

that the people of Nigeria are not of meaningfully uniform color and race.[3] Thus, an allegation of discrimination on the basis of being Nigerian strongly implies discrimination on the basis of color and race, as well. Therefore, it can reasonably be expected that an EEOC investigation of Mr. Oranika's national origin discrimination claim would lead to an investigation of race and color discrimination. Moreover, the claims describe the same conduct and implicate the same individuals in that the Complaint expressly incorporates the EEOC Charge and the specific allegations of discriminatory conduct therein.[4]

In light of the foregoing, the Court finds that Mr. Oranika's race and color discrimination claims are not subject to dismissal under Rule 12(b)(6) standards. The City's motion to dismiss those claims is respectfully denied.

---

[3] Despite diligent efforts, the research librarians at the library in the Courthouse were unable to locate a reliable citation concerning the precise racial composition of the people of Nigeria. They did find authorities that appeared to strongly indicate that Nigeria has the largest population of black people in Africa, if not the world. In addition, the materials which discussed the composition of the people of Nigeria discussed that composition only in terms of membership in various indigenous tribal groups, and further appeared to suggest that the population of Nigeria may be so overwhelmingly consistent in terms of color and race that no surveys or studies endeavor to document the racial makeup there. For present purposes, it is safe to say that this at least may be a case where national origin, race, and color are all effectively the same thing, as discussed in the various authorities cited above. While the City will have the opportunity to argue at summary judgment or trial that the racial composition of the people of Nigeria is sufficiently diverse that this case falls outside the parameters of the authorities cited above (as well as to advance any other appropriate arguments at the summary judgment stage and/or at trial), the available information and state of the Complaint do not direct dismissal under Rule 12(b)(6). The Court also notes that the term "Nigerian" is increasingly being used to denote race and color, as evidenced by the fact that the U.S. Census Bureau automatically categorizes people who write "Nigerian" on their census forms as being of the "Black or African American" race. *See* U.S. Census Bureau's 2000 Definition of Race, *available at*, http://quickfacts.census.gov/qfd/meta/long_68176.htm (last visited Sept. 26, 2005).

[4] The City cites *Rodgers v. Arlington Hts. School Dist.*, 171 F. Supp. 2d 773 (N.D. Ill. 2001), in support of its view that the claims are not reasonably related. However, *Rodgers* involved a materially different situation than the one presented here, as the plaintiff in *Rodgers* filed an administrative charge alleging that she had been discriminated on the basis of her race (*id.* at 776), and then attempted to sue alleging discrimination on the basis of, *inter alia*, national origin (*id.*). That is a different scenario, at least oftentimes; a black individual working for the City of Chicago may allege that he was discriminated against in favor of a non-black individual, and many times the black plaintiff, the putative non-black beneficiary of the discrimination, and their bosses will all have been born and raised in the City of Chicago, such that they are all of the same national origin.

## III. The Court Dismisses The Discriminatory Discharge Claims.

The City also argues that Mr. Oranika's Title VII and ADEA claims of discriminatory discharge should be dismissed because they are beyond the scope of his EEOC Charge. (D.E. 16 at 1.) Title VII plaintiffs cannot sue on claims that were not included in their EEOC charges. *Cheek*, 31 F.3d at 500.

Although Mr. Oranika argues that the EEOC Charge has been amended to include claims of discriminatory discharge (D.E. 25 at 3), a motion to dismiss must be decided on the face of the complaint. *Doe v. First Nat. Bank of Chicago*, 865 F.2d 864, 873 (7th Cir. 1989). Because the Complaint contains only one EEOC Charge (No. 21BA32710), and that charge fails to allege discriminatory discharge, the Court finds that, on its face, the Complaint does not state a claim for discriminatory discharge.

Furthermore, the discriminatory discharge claim cannot be inferentially deemed to have been included in the EEOC Charge by virtue of its being "like or reasonably related to the allegations of the charge." *See Cheek*, 31 F.3d at 500. Claims that are "reasonably related" must, at a minimum, "describe the same conduct." *Id.* at 501. Here, there are no allegations in the EEOC Charge describing the conduct of discharge, let alone discharge on the basis of discrimination. Thus, the discriminatory discharge claim is not reasonably related to any claim stated in the EEOC Charge. *Accord, e.g., O'Rourke v. Cont'l Cas. Co.*, 983 F.2d 94, 97 (7th Cir. 1993) (holding that retaliation claim not reasonably related to discrimination claim).

Consequently, the Court dismisses the discriminatory discharge claim without prejudice because that claim was not included in the EEOC Charge and is not reasonably related to any claim included therein. If Mr. Oranika believes that the EEOC charge was amended to include a

8

discriminatory discharge claim, he should move to file an amended complaint and attach, at a minimum, a copy of the amended EEOC Charge to that motion to amend.

## IV. The Court Dismisses the § 1981 and § 1983 Claims.

The City argues that Mr. Oranika's § 1981 and § 1983 claims should be dismissed because he failed to allege or plead that his purported injuries were caused by an unconstitutional municipal policy, practice, or custom. (D.E. 16 at 1-2.) Mr. Oranika responds that it is the City's burden to show that its policies were constitutional. (D.E. 25 at 4). Mr. Oranika is incorrect.

To state a claim under § 1981 or § 1983, a plaintiff must allege that his injuries were caused by an unconstitutional municipal policy, practice, or custom. *See McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citing *McTighe v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Mr. Oranika could have satisfied this requirement by alleging one of the following: 1) that the City had an express policy that, when enforced, caused a constitutional deprivation; 2) that the City had a widespread practice that, though not written law or express municipal policy, was so well-settled and permanent as to constitute a custom or usage within the force of law; or 3) that Mr. Oranika's constitutional injury was caused by a person with final policymaking authority. *See id.* Mr. Oranika made no such allegations (nor any factual allegations from which such conclusion(s) could fairly be drawn or inferred). Therefore, the Court dismisses those claims—again, without prejudice to his repleading the counts.

## V. The Court Dismisses the Claims for Punitive Damages.

The City argues that Mr. Oranika's claims for punitive damages should be dismissed because such damages are unavailable under the ADEA or against the City in Title VII, § 1981, or § 1983 claims. (D.E. 16 at 2.) Though Mr. Oranika disputes the City's contention (D.E. 25 at

5), the City is correct. *See* 42 U.S.C. § 1981a(b)(1) (2005) (precluding punitive damages under Title VII against a government or government agency); *Baker v. Runyon*, 114 F.3d 668, 669 (7th Cir. 1997) (same); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (7th Cir. 2002) (teaching that, under the ADEA, "[p]laintiffs may not . . . recover money damages for pain and suffering, nor may they obtain punitive damages"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (precluding punitive damages against a municipality under § 1983); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir. 1984) (precluding punitive damages against a municipality under § 1981, *overruled on other grounds*, *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005). Consequently, the Court dismisses Mr. Oranika's claim for ten million dollars in punitive damages.

## SUMMARY

In conclusion, the City's Motion is granted in part and denied in part. Specifically, the Court grants the City's unopposed motion to dismiss the Department of Revenue as a defendant. The Court denies the City's motion to dismiss the claims for race and color discrimination. The Court grants the City's motion to dismiss the claims for discriminatory discharge under Title VII and the ADEA, finding that those claims are not reasonably related to any claim alleged the EEOC Charge. The Court grants the City's Motion to dismiss the § 1981 and § 1983 claims because Mr. Oranika failed to allege those claims or facts supporting them. The Court grants the City's Motion to dismiss the claims for punitive damages because such damages are unavailable under the ADEA or against the City in Title VII, § 1981, or § 1983 claims. As explained above,

some of the dismissals are without prejudice and with leave to replead.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 10-17-05